UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Jalin Realty Capital Advisors, LLC,

                    Plaintiff,                                    Court File No. 11-cv-165 (JRT/LIB)

        v.

                                                        **REPORT AND RECOMMENDATION**

Hartford Casualty Insurance Company,


                    Defendant.

---

        This matter came before the undersigned United States Magistrate Judge pursuant to an Order of Referral, [Docket No. 176], made in accordance with the provisions of 28 U.S.C. § 636(b)(1)(B), and upon Defendant's Motion for Attorney's Fees and Related Nontaxable Expenses, [Docket No. 134].

        For the reasons set forth below, the undersigned recommends that Defendant's Motion for Attorney's Fees and Related Nontaxable Expenses, [Docket No. 134], be **GRANTED IN PART** and **DENIED IN PART**.

## I.      BACKGROUND AND STATEMENT OF FACTS

        Jalin Realty Capital Advisors, LLC, ("Jalin")[1] initiated the present case on January 21, 2011. (See, Compl. [Docket No. 1]). In its Complaint, Jalin alleged that former-Defendant A Better Wireless, NISP, LLC ("ABW") was an illegal cybersquatter which created an illegal website purporting to provide information about Jalin's business operations. (Id.). Maryland Attorney Andrew Ndubisi Ucheomumu was admitted pro hac vice to represent Jalin. Thereafter,

---

[1] Jalin Realty Capital Advisors, LLC, is the original Plaintiff in this matter; however, ABW's counterclaims are asserted against Rhythm Stone Media Group, LLC, d/b/a Jalin Realty Capital Advisors as the Counterclaim Defendant. (See, Order [Docket No. 30]). For ease of reference the undersigned refers to the Plaintiff/Counterclaim Defendant as "Jalin."

ABW filed its Answer and its First Amended Answer, [Dockets No. 7 and 8], asserting affirmative defenses and counterclaims. (See, Amended Answer [Docket No. 8]).

On June 8, 2011, the undersigned held the Pretrial Conference. (Minute Entry, [Docket No. 25]). Despite language in the Pretrial Notice and Order requiring counsel to appear in person, Jalin's attorney, Mr. Ucheomumu, did not attend. (Id.; see, also, [Docket No. 9]). The undersigned sanctioned Mr. Ucheomumu for this failure to appear by ordering him to reimburse ABW's counsel for his time and expense in attending the June 8, 2011, Pretrial Conference. (See, [Docket No. 26]).

On or about October 15, 2011, Articles of Dissolution were filed with the State of Ohio, dissolving Rhythm Stone Media Group d/b/a Jalin Realty Capital Advisors, LLC.[2] (Motion to Withdraw, Exh. 1, [Docket No. 163]).

On December 6, 2011, ABW filed a Motion for Sanctions Due to Improper Certification of Discovery Responses, [Docket No. 52]. In support of the Motion, ABW alleged that Jalin had failed to timely respond or object to either ABW's First Set of Interrogatories and Requests for Production of Documents or ABW's Second Set of Requests for Production of Documents, and instead filed late, non-responsive, and non-verified objections and "responses." (Mem. in Supp., [Docket No. 57], 7).

The undersigned held a Hearing on the Motion on January 26, 2012—at which Mr. Ucheomumu failed to appear—and on February 22, 2012, the undersigned issued an Order granting the Motion in part, [Docket No. 60]. The undersigned held that Jalin's responses to ABW's Interrogatories and Requests for Production violated Federal Rule of Civil Procedure 26(g) and therefore, sanctions were appropriate. (Id. at 10). After considering available sanctions, the undersigned ordered "that in any subsequent judicial proceeding regarding this

---

[2] See, fn. 1, supra.

matter, [Jalin] cannot rely on or offer into evidence any information, documents, or other materials which were not provided in response to [ABW's] original sets of discovery requests." (Id. at 11). For his failure to appear at the January 26, 2012, Motion Hearing; his failure to inform either the Court or opposing counsel that he would not be appearing at that Hearing; and his failure to file a substantive response to the Motion, the undersigned ordered Mr. Ucheomumu to personally reimburse ABW for the time traveling to and attending the January 26, 2012, Motion Hearing—a total of $1,610.00. (Id. at 12-13).

On April 24, 2012, local counsel for Jalin filed a Motion to Withdraw as Attorney of Record without Substitution and a Notice that the Motion would be heard on May 8, 2012. ([Docket Nos. 65 and 66]). The day before the scheduled Motion Hearing, Mr. Ucheomumu filed a Motion to Continue the Motion Hearing, [Docket No. 71]. During the May 8, 2012, Motion Hearing, the undersigned denied Mr. Ucheomumu's Motion as untimely, noting that Mr. Ucheomumu had long had notice of the pending Motion and the Hearing date. ([Docket No. 74]). The undersigned also ultimately denied local counsel's Motion to Withdraw as Attorney of Record without Substitution. ([Docket No. 76]).

On May 30, 2012, ABW filed a Motion for Summary Judgment. ([Docket No. 77]). On January 8, 2013, Chief Judge John R. Tunheim issued an Order granting ABW's motion for summary judgment in its favor on all of Jalin's claims; Chief Judge Tunheim also granted ABW's motion for summary judgment on its breach of contract counterclaim, but he denied ABW's motion for summary judgment as to its fraud counterclaim. (See, Order [Docket No. 91]). As relevant to the Motion presently before the Court, Chief Judge Tunheim described "all of Jalin's claims" as "variously unsupported, insufficiently pled, and entirely without merit." (Id.

3

at 2). Chief Judge Tunheim also noted that "[t]he factual record before the Court is quite sparse, due in large part to the conduct of Jalin's counsel during discovery." (Id. at 3).

On February 14, 2013, Mr. Ucheomumu filed a Motion to Withdraw as pro hac vice counsel. ([Docket No. 106]). The undersigned held a Hearing on the Motion on February 28, 2013, and thereafter issued an Order granting Mr. Ucheomumu's Motion. ([Docket No. 114]). In May 2013, new local counsel and pro hac vice counsel filed appearances on behalf of Jalin. ([Docket Nos. 116, 117, and 118]).

On December 4, 2013, the parties filed a Stipulation informing the Court that the parties had entered into a Settlement Agreement resolving the remaining claims. (Stipulation, [Docket No. 130]). The Stipulation requested the Court enter judgment pursuant to the Court's previous Summary Judgment ruling; dismiss ABW's counterclaims for fraud, RICO violations, conversions, and unjust enrichment with prejudice; and retain jurisdiction over the present case for purposes of enforcing the Settlement Agreement. (Id.). The Stipulation also expressly reserved ABW's right to pursue any claim for attorney's fees. (Id.).

On December 6, 2013, Chief Judge Tunheim issued an Order, [Docket No. 132], granting the relief requested in the parties' Stipulation. (Order [Docket No. 132]). On December 20, 2013, ABW filed the present Motion for Attorney's Fees and Related Nontaxable Expenses, [Docket No. 134], seeking approximately $149,000 in attorney's fees plus fees and costs incurred in the present litigation.

However, on January 24, 2014, ABW and Jalin filed another Stipulation in which they indicated that ABW was also pursuing reimbursement of its attorney's fees, cost, and expenses from its insurer, Hartford Financial Services Group ("Hartford"). ([Docket No. 138]). The parties believed that ABW's claim for reimbursement from Hartford could significantly alter ABW's

Motion for Attorney Fees in the present case, and the parties agreed that a stay of ABW's Motion for Attorney's Fees pending resolution of ABW's claim for insurance coverage was in the best interest of judicial economy. ([Docket No. 138]). On January 29, 2014, Chief Judge Tunheim issued an Order, [Docket No. 139], staying ABW's Motion for Attorney's Fees pending the resolution of ABW's claim for reimbursement against Hartford, as requested in the January 24, 2014, Stipulation.

On December 22, 2014—while the present litigation was stayed pursuant to Chief Judge Tunheim's January 29, 2014, Order—David C. Jackson was indicted in the United States District Court for the District of Connecticut on one count of conspiracy to commit wire fraud, nine counts of wire fraud, and one count of making a false statement to Special Agents from the Federal Bureau of Investigation. (Smith Dec., Exh. C, [Docket No. 180-1], 52-70). The indictment alleged that Jackson, under the alias C. David Manns, had held himself out as a Director of Jalin, and as such had engaged in a fraudulent lending scheme. (Id.). Jackson was later convicted of one count of conspiracy to commit wire fraud and nine counts of wire fraud, and sentenced to 205 months' imprisonment. (Id. at Exh. D, [Docket No. 180-1], 71-74).

In July 2015—also while the present litigation was stayed pursuant to Chief Judge Tunheim's January 29, 2014, Order—the Attorney Grievance Commission of Maryland ("the Commission") petitioned for disciplinary or remedial action against Mr. Ucheomumu—Jalin's former pro hac vice counsel. See, Atty Grievance Commission of Md v. Ucheomumu, 450 Md. 675 (Md. 2016). The Commission alleged that Mr. Ucheomumu had violated the Maryland Lawyers' Rules of Professional Conduct in the course of his representation of David C. Jackson and Jackson's companies, which included Jalin. Id. at 682-83. The Circuit Court of Montgomery County, Maryland, held an evidentiary hearing and, in October 2015, it rendered Findings of

Facts and Conclusions of Law, concluding that Mr. Ucheomumu had violated several of the Maryland Lawyer's Rules of Professional Conduct, including specifically with respect to his conduct in the present case before this Court. Id. at 684, 691-93.

On review, the Court of Appeals of Maryland found by clear and convincing evidence that Mr. Ucheomumu had violated multiple Maryland Rules of Professional Conduct. Id. at 701-12. It issued its opinion on December 15, 2016, and as specifically relevant to the litigation before this Court and the present Motion for Attorney Fees, the Court of Appeals of Maryland concluded that Mr. Ucheomumu had violated the following Maryland Rules of Professional Conduct:

1. Rule 1.1:  "An attorney shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."[3]

2. Rule 3.1:  "An attorney shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous . . . ."[4]

3. Rule 3.4: "An attorney shall not:  (a) unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value. An attorney shall not counsel or assist another person to do any such act; . . . (d) in pretrial procedure, make a frivolous

---

[3]The Maryland Count of Appeals concluded that Mr. Ucheomumu violated this rule by his behavior in the litigation before this Court.

[4]The Maryland Count of Appeals noted Chief Judge Tunheim's statement in his Order that Jalin's claims were "variously unsupported, insufficiently pled, and entirely without merit" and it also noted that Jalin's initial assertions on some contested facts were later contradicted by its own declarations. The Maryland Court of Appeals concluded that Mr. Ucheomumu's "conduct in the [Minnesota] litigation constitutes a violation of Rule 3.1."

discovery request or fail to make reasonably diligent effort to comply with a legally proper discovery request by an opposing party . . . ."[5]

    4.  Rule 8.4:  "It is professional misconduct for an attorney to:  . . . (d) engage in conduct that is prejudicial to the administration of justice . . . ."[6]

Id. at 705-6, 709-10, 712.

Meanwhile, ABW and Hartford reached a settlement with regards to the insurance coverage litigation. (First Lafeber Declaration, [Docket No. 146], at ¶ 3). As part of the settlement, ABW assigned all of its rights to seek recovery of attorney's fees and related nontaxable expenses in the present case to Hartford. (Id.).

Accordingly, on January 6, 2017, ABW filed a Motion to Substitute Party and Lift the Stay, [Docket No. 143], seeking to substitute Hartford in the place of ABW—as Defendant and Counterclaim Plaintiff—and to lift the current stay in the present case. After a Motion Hearing before the undersigned in April 2017, [Docket No. 150], the undersigned issued a Report and Recommendation recommending that the Motion be granted. ([Docket No. 151]). On May 11, 2017, Chief Judge Tunheim issued an Order adopting the Report and Recommendation and granting the Motion to Substitute Party and Lift the Stay, [Docket No. 155]. Thus, Hartford was substituted into the case in place of ABW.

On November 8, 2017, Chief Judge Tunheim granted a Motion to Withdraw filed by counsel for Jalin. ([Docket No. 175], 5). Therein, Chief Judge Tunheim noted that the withdrawal might result in delay "[b]ecause a corporate entity cannot proceed pro se," but he

---

[5] The Maryland Count of Appeals concluded that Mr. Ucheomumu violated this rule by his "conduct during discovery in the [Minnesota] litigation, as evidenced by Judge Brisbois' Order . . . ."

[6] The Maryland Count of Appeals concluded that Mr. Ucheomumu violated this rule by his "conduct in the [Minnesota] litigation."

also noted that "Harford Casualty would be entitled to default judgment if Jalin is unable to secure substitute counsel, which would 'expedite the case, rather than delay it.'" (Id. at 4). The same day, Chief Judge Tunheim issued an Order referring the pending Motion for Attorney Fees and Related Nontaxable Expenses under Federal Rule of Civil Procedure 54(d)(2) to the undersigned for Report and Recommendation, [Docket No. 176]).

On November 9, 2017, the undersigned issued a Briefing Schedule which, in relevant part, instructed Hartford to file and serve a Memorandum in Support of the present Motion by no later than Thursday, November 30, 2017. ([Docket No. 177]). The undersigned further directed:

> The individuals and entities from which Hartford seeks to recover attorney's fees or other related nontaxable expenses—Rhythm Stone Media Group, LLC, d/b/a Jalin Realty Capital Advisors, LLC; Andrew Ndubisi Ucheomumu and the Law Offices of Andrew Ndubisi Ucheomumu; Greg C. Gilbert and the Gilbert Law Office; Kristi A. Hastings and Pemberton, Sorlie, Rufer & Kershner; and Joshua M. Heggem and Pemberton, Sorlie, Rufer & Kershner—shall file and serve their Responsive Memoranda by no later than Thursday, December 14, 2017.

(Id. at 2). Thereafter, Hartford could file and serve a Reply Memorandum by no later than Thursday, December 21, 2017. (Id. at 3). The Court also scheduled a Hearing on the Motion for January 3, 2018. (Id.).

Hartford filed its Memorandum in Support of the present Motion on November 30, 2017, [Docket No. 178], along with Declarations in support, [Docket Nos. 179 and 180], and a Request for Judicial Notice, [Docket No. 181]. In this most recent Memorandum in Support, Hartford narrows the request sought to attorney fees and non-taxable costs totaling $170,476.77 against only (1) Jalin pursuant to the Lanham Act; (2) Mr. Ucheomumu and the Law Office of Andrew Ndubisi Ucheomumu as a sanction pursuant to 28 U.S.C. § 1927; and (3) against Jalin, Mr. Ucheomumu and the Law Office of Andrew Ndubisi Ucheomumu as a sanction for bad faith conduct pursuant to the Court's inherent authority.  (Mem. in Supp., [Docket No. 178], 8-9). At

the January 3, 2018, Motion Hearing, Hartford further specified on the record that it is not seeking attorney fees against Jalin's local counsel. (Jan. 3, 2018, Motion Hearing, Digital Record, 10:38-39, 10:42-44). Neither Jalin nor Mr. Ucheomumu filed a responsive memorandum. The undersigned held a Hearing on the Motion on January 3, 2018, which neither Jalin nor Mr. Ucheomumu attended. (Minute Entry, [Docket No. 184]). In addition, the docket reflects that Jalin has no current counsel of record.

## II.    DEFENDANT'S MOTION FOR ATTORNEY'S FEES AND RELATED NONTAXABLE EXPENSES, [Docket No. 134]

Federal Rule of Civil Procedure 54 allows a post-judgment motion for the recovery of costs and attorney's fees, and it is within the Court's discretion whether to award costs and fees. See, Garrison v. ConAgra Foods Packaged Foods, LLC, 833 F.3d 881, 886 (9th Cir. 2016). "The general rule is that 'an assignment operates to place the assignee in the shoes of the assignor, and provides the assignee with the same legal rights as the assignor had before assignment." Stuart C. Irby Co., Inc. v. Tipton, 796 F.3d 918, 924 (8th Cir. 2015) (citations omitted). Therefore, Hartford is entitled to recover costs and attorney fees only to the extent that ABW would be entitled to do so had it not assigned its rights to Hartford.

In its December 20, 2013, Motion for Attorney Fees and Related Nontaxable Expenses, ABW stated that it estimated the requested award would total "approximately $149,000.00, plus all fees and costs incurred in the prosecution of the present motion." (Motion for Atty Fees, [Docket No. 134]). Because of the subsequent stay of proceedings in order to allow completion of the insurance coverage litigation, a Memorandum in Support of the Motion, [Docket No. 178], was not filed until November 30, 2017. In that Memorandum, Hartford requested attorney's fees and non-taxable costs in two different total amounts:  on page 8, the total sought was identified

as $170,476.77; on page 30, the total sought was identified as $161,624.10; and on page 39, the total sought was identified again as $170,476.77. (Mem. in Supp., [Docket No. 178], 8, 30, 39).

The written submissions to the Court in support of the present Motion for Attorney Fees and Related Nontaxable Expenses provide documentation showing invoices billing a total of $170,774.27. (See, Sec. Lafeber Dec., Exh. A, [Docket No. 185-1], 1-53). However, Mr. Lafeber indicates in his Second Declaration that three entries on the submitted billing records "relate solely to ABW's insurance coverage issues" and is not time for which Hartford is now seeking to recover attorney fees. (Sec. Lafeber Dec., [Docket No. 185], 4). This appears to be the cause of the difference between the $170,774.27 total of the billing entries submitted and the $170,476.77 Hartford identifies in its Memorandum in Support of the Motion for Attorney Fees and Related Nontaxable Expenses. Accordingly, the undersigned proceeds upon Hartford's request for a total award of fees and costs of $170,476.77.

In addition, the billing records now before the Court indicate that $6,792.67 of the total amount Hartford now seeks is attributable to costs. (See, Sec. Lafeber Dec., Exh. A, [Docket No. 185-1], 7, 12-13, 15, 17, 19, 22, 24, 27, 29, 31, 34, 46, 49). Thus, subtracting costs from the total amount Hartford now seeks—costs are addressed in this Report and Recommendation after analysis of the attorney fees—Hartford seeks to recover a total of $163,684.10 in attorney fees.

### A.  Attorney Fees against Jalin

#### 1.  Recovery of Fees pursuant to the Lanham Act

The Lanham Act states:  "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). The Eighth Circuit has explained that, for purposes of awarding attorney fees under the Lanham Act, "an exceptional case is one in which the plaintiff's action was groundless, unreasonable, vexatious, or pursued in bad faith."

<u>Community of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus Christ's</u>
<u>Church</u>, 634 F.3d 1005, 1013 (8th Cir. 2011) (citation omitted). However, a finding of bad faith
is not a prerequisite to a finding that a case is exceptional within the meaning of the Lanham Act.
<u>Id.</u> Moreover, the United States Supreme Court recently explained, in the patent infringement
context:

> [A]n "exceptional" case is simply one that stands out from others with respect to
> the substantive strength of a party's litigating position (considering both the
> governing law and the facts of the case) or the unreasonable manner in which the
> case was litigated. District courts may determine whether a case is "exceptional"
> in the case-by-case exercise of their discretion, considering the totality of the
> circumstances.

<u>Octane Fitness, LLC v. ICON Health & Fitness, Inc.</u>, 134 S. Ct. 1749, 1756 (2014). As the party
seeking attorney's fees, Hartford bears the burden to demonstrate "an accurate and reliable
factual basis for an award of attorneys' fees . . . and [] the district court has wide discretion in
making a fee award determination." <u>See</u>, <u>Philipp v. ANR Freight Sys., Inc.</u>, 61 F.3d 669, 675
(8th Cir. 1995); <u>see</u>, <u>also</u>, <u>Gurman v. Metro Housing and Redevelopment Auth.</u>, 884 F. Supp. 2d
895, 912 (D. Minn. 2012) (citing <u>Philipp</u>, 61 F.3d at 675).

Jalin is not currently represented by counsel and, as a corporation, it may not represent
itself. Therefore, it has not and currently cannot oppose the present Motion.

In any event, a review of the record now before the Court demonstrates that Hartford is
entitled to recover attorney fees against Jalin under the Lanham act. As Hartford argues, it is the
"prevailing party" because Jalin's claims against it as assignee of ABW were dismissed with
prejudice. (<u>See</u>, Order on Motion for Summary Judgment, [Docket No. 91], 31 (dismissing all of
Jalin's claims against ABW with prejudice)). In addition, the facts as detailed above, including
the Orders of this Court, and the out-of-state criminal and disciplinary proceedings, establish that

the present "action was groundless, unreasonable, vexatious, or pursued in bad faith," rendering this an "exceptional case" for purposes of an attorney fee award under the Lanham Act.

This is not a finding which must be made for the first time by the Court at this point, nor does it require the Court to make any additional findings to those already in the record now before the Court. As already set forth above, in his January 8, 2013, Order, Chief Judge Tunheim characterized "all of Jalin's claims" as "variously unsupported, insufficiently pled, and entirely without merit." (Order, [Docket No. 91], 2). Moreover, the independent holding of the Maryland Court of Appeals[7], as also already set forth above, that Jalin's counsel of record had violated multiple Rules of Professional Conduct by actions taken during his representation of Jalin in the case presently before this Court further reinforces a finding that the present action was vexatious or pursued in bad faith. Thus, Hartford as assignee of ABW is entitled to recover attorney fees from Jalin under the Lanham Act.

### 2.  Calculation of Attorney's Fees

The Eighth Circuit has instructed that the lodestar method, which multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate, is appropriate when a statute provides for awarding reasonable attorney's fees to a prevailing party. See, Marez v. Saint-Gobain Containers, Inc., 688 F.3d 958, 965 (8th Cir. 2012). Federal Courts within the District of Minnesota and other Federal Courts have utilized the lodestar method to calculate fees under the Lanham Act. See, e.g., Zerorez Franchising Syst., Inc. v. Distinctive Cleaning, Inc., No. 13-cv-2326 (ADM/BRT), 2016 WL 2637801, *7 (D. Minn. May 6, 2016); Professional LED Lighting, Ltd. v. Aadyn Tech. LLC, No. 14-cv-61376 BLOOM/VALLE, 2015 WL 11570970,

---

[7] The Court may take judicial notice of the existence of another court's opinion, "'which is not subject to reasonable dispute over its authenticity.'" See, McIvor v. Credit Control Servs., Inc., 773 F.3d 909, 914 (8th Cir. 2014) (citation omitted).

*1-5 (S.D. Fla. July 22, 2015); <u>Accentra Inc. v. Staples, Inc.</u>, No. CV 07-5862 ABC (RZx), 2012 WL 12877868, *5 (C.D. Cal. Jan. 3, 2012).

### a.  Reasonableness of the Hourly Rates

In its November 30, 2017, submissions to the Court in support of the present Motion, Hartford included a Declaration and Fee Petition by Michael Lafeber, who represented ABW in this action prior to the assignment to Hartford of ABW's claim for attorney fees, costs, and expenses. (Lafeber Dec., [Docket 179]). Therein, Mr. Lafeber asserted that as lead litigation counsel for ABW, his hourly rate "ranged from $425 to $550," and he billed a total of 258.22 hours—for a total of $128,483.60—for his work on the present case; his associate Erin O. Dungan's hourly rate "ranged from $275 to $325," and she billed a total of 88.6 hours—for a total of $25,760.00—on the present case; and his associate Kathryn M. McDonald's hourly rate "ranged from $230 to $240," and she billed a total of 40.75 hours—for a total of $9,440.50—on the present case. (<u>Id.</u> at 2-3). Beyond this summary, Mr. Lafeber did not provide information regarding the specific hourly rates for specific tasks performed by him or his two associates. (<u>Id.</u> at 1-6).

For other reasons, which are discussed in more detail below, at the January 3, 2018, Motion Hearing, the undersigned ordered Hartford to file on CM/ECF time and billing records which support its claims for attorney's fees and non-taxable costs. (Jan. 3, 2018, Motion Hearing, Digital Record, 10:50-51). On January 10, 2018, Hartford filed a Second Declaration from Mr. Lafeber. (Sec. Lafeber Dec., [Docket No. 185], 1).

The undersigned notes that the billing records provided as an attachment to Mr. Lafeber's Second Declaration again do not clearly indicate the rate at which the individual time entries were billed. Although Mr. Lafeber again states ranges of hourly billing rates for the individuals

for whom time is billed on the invoices provided—e.g., Mr. Lafeber's rate was "$425-$550," Ms. Dungan's rate was "$275-325," and Ms. McDonald's rate was "$230-$240" (see, Sec. Lafeber Dec., [Docket No. 185], 2)—the rates at which specific and individual actions were billed are not indicated.

However, to determine whether proposed hourly rates are reasonable, this Court looks at the rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." See, Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984). In addition, the Court may draw on its own experience and knowledge of the market rates. See, Trickey v. Kaman Indus. Tech. Corp., 705 F.3d 788, 807, (8th Cir. 2013).

According to Lafeber's First Declaration, to the best of Mr. Lafeber's knowledge, the rates charged ABW by himself, Ms. Dungan, and Ms. McDonald were either at or below prevailing market rates in the Minneapolis/St. Paul area for their areas of expertise. (Lafeber Dec., [Docket No. 179], 2). Mr. Lafeber had over 20 years of experience, mostly specializing exclusively in intellectual property litigation, and he billed at $425 to $550 per hour; Ms. Dungan had 12 years of experience and she also specialized in intellectual property law, and she billed at $275 to $325 per hour; and Ms. McDonald likewise had practiced law for some time working primarily on intellectual property litigation, and she billed at $230 to $240 per hour. (Id. at 2-3).

The stated hourly rates for the members of ABW's legal team are reasonable for the Minnesota legal community. The Court, drawing on its own experience and knowledge of the local legal market, notes that rates received by intellectual property litigation attorneys are determined by their own market forces, and hourly rates as stated in Mr. Lafeber's First

Declaration are fairly typical for members of this state's intellectual property bar. Therefore, the Court finds that the rates in this case are reasonable.

The undersigned notes that reducing the attorney's fees award by removal of the hours spent on work which related solely to the prosecution of ABW's counterclaims is rendered more difficult by the imprecise nature of the written submissions now before the Court. As explained above, Hartford has not identified the specific hourly rate charged for individual billing entries[8]; instead, Hartford has relied on Mr. Lafeber's Declarations, which refer generally to a "range" of rates for each attorney involved. Without more specific information, there are simply too many unknown variables for the Court to exactly determine the precise billing amount attributable to each and every billing entry. However, the rate ranges provided by Mr. Lafeber provide guidance. After consideration of those ranges, the undersigned will calculate—for purposes of those billing entries which are determined to be unrecoverable under the Lanham Act but for which a precise hourly billing rate is not discernable from the records now before the Court— Mr. Lafeber as billing at $475 per hour, Ms. Dungan as billing at $300 per hour, and Ms. McDonald as billing at $235 per hour. These are reasonable rates, and they are within the ranges of rates Hartford has provided the Court.

### b.  Reasonableness of the Number of Hours Expended

### i.  Lanham Act Claims v. Non-Lanham Act Claims

Although it does not appear that the Eighth Circuit has directly addressed how to calculate attorney fees awards made under the Lanham Act in cases which involve both Lanham

---

[8] This is not the first occasion in the present case upon which Mr. Lafeber has failed to indicate an exact hourly billing rate that he charged Defendant. In the Court's February 22, 2012, Order awarding sanctions based upon Mr. Lafeber's time spent traveling to, attending, and traveling from a January 26, 2012, Motion Hearing, the undersigned calculated the amount of the sanction based upon the specific rate Mr. Lafeber indicated an associate at his law firm was billing on this case "because Mr. Lafeber did not state exactly how much he was billing the Defendant." This resulted in the sanction being assessed at $230 per hour, despite Mr. Lafeber's "remark[] that he usually billed $520 /hour." (See, Order, [Docket No. 60], 13).

Act claims and non-Lanham Act claims, at least one other United States District Court within the Eighth Circuit has held that when the non-Lanham Act claims are "inextricably intertwined" with the Lanham Act claims, "any estimated adjustment [for time spent on non-Lanham Act claims] would be meaningless." See, B&B Hardware, Inc. v. Hargis Industries, Inc., No. 6-cv-1654 SWW, 2010 WL 1152278, *2 (E.D. Ark. Dec. 29, 2010). Other Federal Courts have done the same, finding the pivotal question whether "'it is impossible to differentiate between work done on claims.'" See, Gracie v. Gracie, 217 F.3d 1060, 1069-70 (9th Cir. 2000) (collecting cases).

In its initial written submissions to the Court related to the pending Motion, Hartford did not seek recovery of fees related to time spent only on the Lanham Act claims. Instead, it contended that such delineation is unnecessary because the Lanham Act claims and the non-Lanham Act claims are "inextricably intertwined" in that they involve the same facts and occurrences. (Mem. in Supp., [Docket No. 178], 35-36).

In the present case, all of Jalin's claims against ABW ostensibly arose out of the same facts. (See, Compl., [Docket No. 1], 4-13; see, also, Order, [Docket No. 91], 6 ("The present action arose because ABW created a website with the domain name 'jrca.info' and used the website to warn others about what it perceived to be Jalin's nefarious business practices.")). However, Hartford argues that ABW's counterclaims were "also intertwined with the core facts common to Jalin's Lanham Act claims, and in any case, represented an important but small percentage of ABW's overall case preparation." (Mem. in Supp., [Docket No. 178], 37). ABW's original counterclaims were for breach of contract, fraud, RICO violations, conversion, and unjust enrichment, and were not based upon ABW's creation of a website; accordingly, they are

16

not necessarily so intertwined with Jalin's Lanham Act claims that identifying time and costs incurred on ABW's counterclaims would be a meaningless exercise . ([Docket No. 8], 16-19).

Therefore, at the January 3, 2018, Motion Hearing, the undersigned ordered Hartford to file on CM/ECF time and billing records which support its claims for attorney's fees and non-taxable costs. (Jan. 3, 2018, Motion Hearing, Digital Record, 10:50-51). The undersigned further instructed Hartford to identify which billing entries were related to work done solely in defense of Jalin's claims against ABW, which were related to work done solely in prosecution of ABW's counterclaims, and which were related to work done in furtherance of both defense and prosecution of Jalin's claims and ABW's counterclaims respectively.

On January 10, 2018, Hartford filed a Second Declaration from Mr. Lafeber, which, in part, further specifies which hours were billed for work done solely in defense of the Lanham Act claims against ABW, which hours were billed for work done solely in prosecution of ABW's counterclaims, and which hours were billed for work which relates to both defense and prosecution. (Sec. Lafeber Dec., [Docket No. 185]; Id. at Exh. A, [Docket No. 185-1]). In addition to indicating such designation on the individual billing entries, Mr. Lafeber also summarized the time billed as follows:  122.20 hours total (95.10 by Mr. Lafeber, 21.30 by Ms. Dungan, and 5.80 by Ms. McDonald) were spent solely on ABW's defense of the Lanham Act claims brought by Jalin; 54.50 hours total (19.80 by Mr. Lafeber, 18.30 by Ms. Dungan, and 16.40 by Ms. McDonald) were spent solely on the prosecution of ABW's counterclaims; and 162.22 hours total (120.02 by Mr. Lafeber, 41.30 by Ms. Dungan, and 0.90 by Ms. McDonald) were spent on work related to both the defense against Jalin's claims and the prosecution of ABW's counterclaims. (Sec. Lafeber Dec., [Docket No. 185], 2-4).

After a thorough review of the submitted invoices and the record now before the Court as a whole, it is clear that the prosecution of ABW's counterclaims against Jalin was <u>not</u> so inextricably intertwined with ABW's defense of Jalin's claims against it that Hartford may now recover attorney fees from Jalin pursuant to the Lanham Act for <u>all</u> of the work done on this action as a whole. Therefore, the undersigned recommends that Hartford not be awarded attorney's fees under the Lanham Act's attorney's fees provision for work done solely on prosecution of ABW's counterclaims against Jalin. This reduces the amount of the requested award by 54.50 hours total—19.80 by Mr. Lafeber, 18.30 by Ms. Dungan, and 16.40 by Ms. McDonald. (Sec. Lafeber Dec., [Docket No. 185], 2-4). However, the undersigned finds that most of the hours spent on ABW's defense against Jalin's claims which are asserted now by Hartford as recoverable are in fact reasonable. Moreover, most of the billing entries which are designated by Hartford as relating to work done in furtherance of both ABW's defense against Jalin's claims and ABW's counterclaims are also reasonable.

After removal of the billing entries related solely to the prosecution of ABW's counterclaims, the remaining amount of attorney's fees being sought is $144,935.10. The additional specific billing entries that the undersigned recommends be removed from the calculus of the attorney's fees award under the Lanham Act, are specifically identified below.

### ii.    Fees on Fees

In its December 20, 2013, Motion for Attorney Fees and Related Nontaxable Expenses, ABW stated that it estimated the requested reward would total "approximately $149,000.00, plus all fees and costs incurred in the prosecution of the present motion." (Motion for Atty Fees, [Docket No. 134]). Because of the subsequent stay of proceedings in order to allow completion of the insurance coverage litigation, a Memorandum in Support of the Motion, [Docket No. 178],

was not filed until November 30, 2017. In that Memorandum, Hartford requested attorney's fees and non-taxable costs in two different total amounts: on page 8, the total sought was identified as $170,476.77; on page 30, the total sought was identified as $161,624.10; and on page 39, the total sought was identified again as $170,476.77. (Mem. in Supp., [Docket No. 178], 8, 30, 39).

At the January 3, 2018, Motion Hearing, the undersigned pointed out to Hartford the change in the amount it sought in 2013 and the amount it currently seeks, and the undersigned informed Hartford that without sufficient billing documentation, the Court would be unable to determine whether the amount sought was reasonable. (Jan. 3, 2018, Motion Hearing, Digital Record, 10:47-50). As Hartford acknowledged on the record at the January 3, 2018, Motion Hearing, it is routine in cases involving complex litigation for the parties to submit detailed billing records for the Court's examination in conjunction with motions for attorney's fees. (Id. at 10:50-51). Moreover, when asked by the Court to explain the over $20,000 difference in the amount initially estimated and the amount now sought, Hartford's counsel stated, "I cannot say one way or another, Your Honor," and counsel further acknowledged that it "is a troubling discrepancy." (Id.). In his Second Declaration, Mr. Lafeber explains that the additional fees and costs now sought reflect "additional invoices issued for time and expenses incurred between December 2, 2013, and July 23, 2014, totaling $20,223.56."

Although Hartford has not provided citation to, and independent research has not discovered, a case from the Eighth Circuit or the District of Minnesota which discusses in detail whether "fees on fees," as fees incurred by bringing a motion for attorney fees are known, are appropriate in Lanham Act cases, there is at least one case from the District of Minnesota awarding such fees on fees in a Lanham Act case, albeit without extensive discussion. See, Novus Franchising, Inc. v. AZ Glassworks, LLC, No. 12-cv-1771 (MJD/TNL), 2013 WL

19

1110838, *9-10 (D. Minn. March 18, 2013). In addition, the general consensus of Federal Courts in other jurisdictions is that fees on fees in Lanham Act cases are permissible. See, e.g., Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant, 771 F.2d 521, 528 (D.C. Cir. 1985) (awarding fees upon fees on a Lanham Act claim); Brefford Mfg., Inc. v. Smith Syst. Mfg. Co., 421 F. Supp. 2d 1117, 1128-29 (N.D. Ill. 2006); Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC, No. 09-80918-CIV-MARRA/JOHNSON, 2011 WL 13108096, *4-5 (S.D. Fla. Aug. 11, 2011). As the United States District Court for the Northern District of Illinois stated in Bretford Manufacturing, Inc.: "[A]n allowance of reasonable fees for presenting a successful fee petition is the only way a fee applicant can be made whole. If it must absorb the cost of proving the appropriate amount, it will be sacrificing part of the award." 421 F. Supp. 2d at 1128.

However, some of the specific billing entries included in the billing records now before the Court delineate work done in relation to the stipulation between the parties to stay the present Motion for Attorney Fees and Related Nontaxable Expenses so that ABW and Hartford could resolve their insurance coverage dispute. (See, Sec. Lafeber Dec., Exh. A, [Docket No. 185-1], 48-52). Those billing entries—on January 10, 2014; January 13, 2014; January 14, 2014; January 15, 2014; January 16, 2014; January 17, 2014; January 21, 2014; January 22, 2014; January 23, 2014; January 24, 2014; January 30, 2014; and July 23, 2014—show a total of 13.2 hours billed by Mr. Lafeber and 0.10 hours billed by Ms. Dungan. (Id.). At the rates set forth and explained above, this equals $6,300.00 in billing entries for work that was necessary only because of Hartford and ABW's insurance coverage dispute, and which is not compensable under the Lanham Act.

Accordingly, the undersigned recommends that the Court reduce the award of attorney fees to Hartford pursuant to the Lanham Act by $6,300.00 because time spent on work that

resulted from Hartford and ABW's separate insurance coverage litigation is not compensable under the Lanham Act. This leaves a total of $138,635.10.

### iii.    Specific Billing Entries for Fees which are not Recoverable

### a.  Redacted Entries

Certain specific billing entries for which Hartford is now seeking an award of attorney's fees have been redacted to the point that the Court can no longer determine whether the billed-for activity was related to the defense against Jalin's claims, prosecution of ABW's counterclaims, or even whether the activity was related to the present action at all.[9]

The entirety of the description of the entry for 0.20 hours by Mr. Lafeber on April 12, 2011, has been redacted, leaving no substantive description whatsoever. (Sec. Lafeber Dec., Exh. A, [Docket No. 185-1], 4). A billing entry for 0.10 hours by Erin Dungan on May 31, 2012, is described only as "Exchange email with [redacted]." (Id. at 26). An entry on November 20, 2013, for 0.20 hours by Mr. Lafeber is described as "Follow-up communication with client regarding [redacted]." (Id. at 44). And an entry on September 26, 2014, for 0.90 hours by Mr. Lafeber is described as "Evaluate [redacted]." (Id. at 53).

Mr. Lafeber asserts that the redacted information consists of "attorney-client privileged communications and attorney work product," and he assures the Court that he "reviewed the unredacted invoices and confirmed the appropriate category for each entry," including only the appropriate entries in his identification of billing for which Hartford may now recover attorney's fees. (Sec. Lafeber Dec., [Docket No. 185], 4). While the undersigned appreciates Mr. Lafeber's concern with preserving the attorney-client and work product privileges, Hartford could have submitted any such information for the Court's in camera review. The decision not to do so and

---

[9] Other redacted entries still contain sufficient information for the Court to determine what activity the billing reflects; those entries are not included in this discussion.

to instead submit records with insufficient information was Hartford's, and the Court cannot reasonably award attorney's fees for activity which is essentially submitted without description.

Because the Court cannot determine from these billing entries, as submitted to the Court by Hartford, whether the billed-for activities are those for which Hartford may recover attorney's fees, the undersigned recommends omitting them from the calculation of the attorney's fees award under the Lanham Act. Doing so reduces the award of attorney fees under the Lanham Act by $617.50, leaving a total of $138,017.60.

### b. Fees Already Awarded

Hartford also seeks to recover fees which are described as being incurred on January 26, 2012, by Mr. Lafeber when he "[p]repare[d] for, travel[ed] to, and attend[ed] hearing on A Better Wireless' Rule 26(g) motion for sanctions in Duluth, MN." (See, Sec. Lafeber Dec., Exh. A, [Docket No. 185-1], 21-22). To award this fee to Hartford would constitute double recovery, as Mr. Ucheomumu was already ordered by the undersigned on February 22, 2012, to personally reimburse ABW for 7 hours of time spent traveling to and attending the January 26, 2012, Motion Hearing. (See, Order, [Docket No. 60], 13).

Therefore, the undersigned recommends that the Court omit these fees from the calculation of the attorney's fees award under the Lanham Act. This reduces the award of attorney fees under the Lanham Act by $2,495.00,[10] leaving a total of $135,522.60.

---

[10] The undersigned recognizes that the February 22, 2012, Order which awarded reimbursement of Defendant for the time its counsel spent traveling to, attending, and traveling from the January 26, 2012, Motion Hearing awarded only $1,610. (See, Order, [Docket No. 60], 13. However, that amount was arrived upon based upon the rate which Mr. Lafeber "represented an associate at his law firm was billing on this case"--$230 per hour—"because Mr. Lafeber did not state exactly how much he was billing the Defendant." (Id.). In the context of the present motion, however, the disallowance of the double recovery for the time spent traveling to, attending, and traveling from the January 26, 2012, Motion Hearing is intended to remove those billing entries from consideration. Therefore, the amount by which the attorney fee award under the Lanham Act should be reduced is not limited to the $1,610 awarded in the February 22, 2012, Order.

As already set forth above, after an exhaustive review of the billing records submitted by Hartford in support of the Motion for Attorney Fees and Related Nontaxable Expenses, [Docket No. 134], now before the Court, the undersigned has concluded that the remaining attorney's fees requested by Hartford against Jalin pursuant to the Lanham Act are the result of reasonable rates charged for a reasonable number of hours, spent either solely in the defense of Jalin's Lanham Act claims against ABW or on work which furthered both that defense of Jalin's claims and the prosecution of ABW's counterclaims but which are inextricably intertwined in nature to the extent that parsing the time further would be a meaningless exercise.

Accordingly, the undersigned recommends that to the extent that the Motion for Attorney's Fees and Related Nontaxable Expenses seeks an award of attorney fees against Jalin under the Lanham Act, the Motion, [Docket No. 134], be **GRANTED in part** and Hartford be awarded $135,522.60 in attorney fees recoverable from Jalin under the Lanham Act.

**B. Attorney Fees and Non-Taxable Costs against Mr. Ucheomumu, and the Law Office of Andrew Ndubisi Ucheomumu pursuant to the Court's inherent authority[11]**

> Federal courts possess certain "inherent powers," not conferred by rule or statute, "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." That authority includes "the ability to fashion an appropriate sanction for conduct which abuses the judicial process." And one permissible sanction is an "assessment of attorney's fees"—an order . . . instructing a party that has acted in bad faith to reimburse legal fees and costs incurred by the other side.
>
> [The United States Supreme Court] has made clear that such a sanction, when imposed pursuant to civil procedures, must be compensatory rather than punitive in nature. In other words, the fee award may go no further than to redress the wronged party "for losses sustained"; it may not impose an additional amount as punishment for the sanctioned party's misbehavior. . . .
>
> . . .

---

[11] Hartford's counsel clarified on the record at the January 3, 2018, Motion Hearing that Hartford is not seeking to recover attorney's fees from Jalin pursuant to the Court's inherent authority. (Jan. 3, 2018, Motion Hearing, Digital Record, 10:38-39, 10:43-44).

> In exceptional cases, the but-for standard even permits a trial court to shift all of a party's fees, from either the start or some midpoint of a suit, in one fell swoop.

Goodyear Tire & Rubber Co. v. Haeger, ___ U.S. ___, 137 S. Ct. 1178, 1186-88 (2017) (citations omitted). "Bad faith, or willful disobedience of a court order, is a requirement for sanctions. A party shows bad faith when it intends to delay or disrupts litigation." Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minn., LLC, No. 9-cv-3037 (SRN/LIB), 2016 WL 215269, *3 (D. Minn. Jan. 19, 2016) (citing Chambers v. NASCO, Inc., 501 U.S. 32, 46 (1991)). Hartford bears the burden to demonstrate "an accurate and reliable factual basis for an award of attorneys' fees . . . and [] the district court has wide discretion in making a fee award determination." See, Philipp, 61 F.3d at 675; Gurman, 884 F. Supp. 2d at 912. Moreover, "[s]anctions are considered based on the record as a whole, rather than merely considering the latest instance of misconduct." Great Lakes Gas Transmission Ltd. P'ship, 2016 WL 215269, at *3 (citing Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 642 (1976)).

Hartford argues that in addition to an award of attorney's fees against Jalin, the Court should also jointly and severally award it attorney's fees against Mr. Ucheomumu, and the Law Office of Andrew Ndubisi Ucheomumu pursuant to its inherent authority because of Mr. Ucheomumu's knowing filing of false information with the Court and his misconduct throughout the litigation of this action. (Mem. in Supp., [Docket No. 178], 42-45). As already set forth above, Mr. Ucheomumu has not responded to the present Motion for Attorney's Fees and Related Nontaxable Expenses, [Docket No. 134], nor did he make an appearance at the January 3, 2018, Hearing on the Motion. ([Docket No. 184]).

Again, the question of whether Mr. Ucheomumu acted in bad faith throughout the course of this litigation is not one that now requires additional findings by the Court. As the undersigned

noted in the February 22, 2012, Order sanctioning Mr. Ucheomumu, Plaintiff failed to comply with his discovery obligations under the Federal Rules of Civil Procedure. (See, Order, [Docket No. 60], 2-3, 6-13). He repeatedly failed to appear at scheduled court proceedings, without informing either the Court or opposing counsel that he did not intend to appear. First, Mr. Ucheomumu failed to appear as required at the July 8, 2011, Pretrial Conference (See, Minute Entry, [Docket No. 25]). Mr. Ucheomumu was sanctioned for this behavior, but the sanctions apparently left him undeterred, because he also failed to appear at the January 26, 2012, Hearing on ABW's Motion for Sanctions Due to Improper Certification of Discovery Responses. (See, [Docket No. 26]; Motion, [Docket No. 52]; Order, [Docket No. 60]). Mr. Ucheomumu was again sanctioned for his failure to appear. (Id.).

In addition, in his January 8, 2013, Memorandum Opinion and Order, Chief Judge Tunheim found that "all of Jalin's claims . . . [were] variously unsupported, insufficiently pled, and entirely without merit." (Order, [Docket No. 91], 2). That Memorandum Opinion and Order acknowledges the various discovery failings by Jalin through Mr. Ucheomumu, noting that "[t]he factual record before the Court is quite sparse, due in large part to the conduct of Jalin's counsel during discovery." (Id. at 3). Chief Judge Tunheim also noted specifically one interrogatory to which Jalin's response directly contradicted information given in a later affidavit by a Jalin employee; Chief Judge Tunheim concluded: "It appears that Jalin's interrogatory response was made in bad faith." (Id. at 6 n.2). Moreover, the January 8, 2013, Memorandum Opinion and Order is replete with other findings of Mr. Ucheomumu's misconduct and the Court's cautioning Mr. Ucheomumu that such behavior was unacceptable. (See, e.g., Id. at 7 ("In a declaration in opposition to ABW's summary judgment motion, Jalin's representative sets forth a much different version of the facts than those that appeared in Jalin's complaint and discovery

responses."); <u>Id.</u> at 7 n.3 ("The Court also warned Jalin's counsel that one of its arguments violated Fed. R. Civ. P. 11(b)(2) because it lacked factual support."); <u>Id.</u> at 8 ("[T]he complaint appears highly misleading[.]"); <u>Id.</u> at 28 ("Jalin has told two very different stories during the course of this action . . . .")).

As already detailed above, the Maryland Court of Appeals also made specific holdings that Mr. Ucheomumu's conduct during the course of the litigation now before this Court violated multiple rules of professional conduct. While not binding on this Court, the findings and holdings of the Maryland court further supports the conclusion here that Mr. Ucheomumu acted in bad faith during this case.

Finally, Hartford points to testimony which David Jackson, the individual who started Jalin, gave at his criminal trial on February 25, 2015.[12] (Mem. in Supp., [Docket No. 178], 12). Jackson testified that he used the names C. David Manns, Charles Jackson, and Andrew Smithson in his business dealings on behalf of Jalin, despite the fact that his legal name is David Charles Jackson. (Smith Dec., Exh. B, [Docket No. 180-1], 12-13, 15-16). During his testimony, Jackson further identified Mr. Ucheomumu as the attorney who "represented us for Jalin." (<u>Id.</u> at 38). Later, when Jackson was asked about signing an affidavit as "C. David Manns" during the litigation in the case now before this Court, he testified:  "Yes, I signed it the way the attorney asked me to sign it, yes." (<u>Id.</u> at 46). When asked to clarify that "C. David Manns" is not his legal name, Jackson further testified:

> A.  I was told to sign it by the attorney that way. But that's not my name, no. But I was told by the attorney in the case to sign it that way, and I did.
> Q. You were told by the attorney to sign –
> A. Yes.
> Q. – a fake name?

---

[12] The Court may take judicial notice of sworn testimony from a prior court proceeding. <u>See</u>, <u>Lawrence v. City of St. Paul</u>, 740 F. Supp. 2d 1026, 1035 (D. Minn. 2010) (taking judicial notice of, among other things, "a full transcript" of a criminal hearing in a related civil case).

  A. That's the name that I was using, yes. He told me to sign it the way that the customer knew me in.

(Id. at 47). Although Jackson's testimony does not definitively state that Mr. Ucheomumu knowingly instructed Jackson to sign a false name to a document which Mr. Ucheomumu then knowingly submitted to the Court as Hartford paints it, it nevertheless lends further support to the Court's previous findings that Mr. Ucheomumu acted in bad faith throughout the course of this litigation.

  Mr. Ucheomumu's act of bringing meritless claims, repeated violations of discovery obligations, misrepresentations to the Court and to opposing counsel, and filing of—at best— misleading documents throughout this case evidence sufficient bad faith that warrants an award of attorney's fees pursuant to this Court's inherent authority. See, e.g., Blodgett v. Hanson, No. 12-cv-301 (JRT/JJG), 2012 WL 12897878, *3 (D. Minn. Oct. 30, 2012), report and recommendation adopted at 2013 WL 1249221 (D. Minn. Mar. 26, 2013) (awarding sanctions, including attorney's fees, pursuant to the Court's inherent authority after finding that the plaintiff "acted in bad faith in filing this lawsuit," abused the discovery process, and made "wanton" and "vexatious" allegations in the complaint); Aviva Sport, Inc. v. Fingerhut Direct Marketing, Inc., No. 9-cv-1091 (JNE/JSM), 2012 WL 12894846, *10 (D. Minn. May 11, 2012) (awarding attorney's fees under the Court's inherent authority after party provided a "half-baked," unsworn response in compliance with a Court order and engaged in a "continued pattern of hide-the-ball gamesmanship regarding discovery").

  However, the imposition of sanctions pursuant to the Court's inherent authority is not intended to be punitive in nature; thus, "the fee award may go no further than to redress the wronged party 'for losses sustained.'" Goodyear Tire & Rubber CO., 137 S. Ct. at 1186-88.

However, in "exceptional cases," the Court may "shift all of a party's fees, from either the start or some midpoint of a suit, in one fell swoop." See, Goodyear Tire & Rubber Co., 137 S. Ct. at 1186-88. For example, "[i]f a plaintiff initiates a case in complete bad faith, so that every cost of defense is attributable only to sanctioned behavior, the court may . . . make a blanket award" of all of the defendant's fees incurred from the beginning of the case. Id. at 1188.

Hartford argues that the present case fits within these parameters. (Mem. in Supp., [Docket No. 178], 45-46). The undersigned disagrees.

Although attorney's fees incurred by ABW in defense of Jalin's claims are clearly attributable to the bad-faith misconduct of Mr. Ucheomumu in bringing the "variously unsupported, insufficiently pled, and entirely without merit" claims, (See, Order, [Docket No. 91], 2), the attorney's fees incurred solely through the prosecution of ABW's counterclaims may not be so attributed. The decision to initiate counterclaims was ABW's, and the undersigned sees no justification for compensating Hartford—as ABW's assignee—for that decision. In addition, for the reasons already set forth above, there are some billing entries for which Hartford has failed to provide adequate information, some for which ABW was already compensated through other sanctions by this Court in awarding attorney's fees, and some incurred because of the separate insurance coverage litigation between ABW and Hartford which must be subtracted from the calculus as well. The recommended calculation of the award of attorney's fees against Mr. Ucheomumu therefore necessarily mirrors the calculation recommended above with respect to the attorney's fees Hartford seeks against Jalin pursuant to the Lanham Act.

Accordingly, the undersigned recommends that to the extent that the Motion for Attorney's Fees and Related Nontaxable Expenses seeks an award of attorney fees against Mr. Andrew Ucheomumu pursuant to the Court's inherent authority, the Motion, [Docket No. 134],

be **GRANTED in part** and that Hartford be awarded $135,522.60 in attorney fees jointly and severally recoverable from Mr. Ucheomumu.[13]

### C. Costs

Without any detailed explanation for why it is entitled to recover costs jointly and severally against Jalin and Mr. Ucheomumu Hartford includes in its requested award various costs incurred totaling $6,792.67. (<u>See</u>, Mem. in Supp., [Docket No. 178], 39; Sec. Lafeber Dec., Exh. A, [Docket No. 185-1], 7, 12-13, 15, 17, 19, 22, 24, 27, 29, 31, 34, 46, 49). Federal Rule of Civil Procedure 54(d)(2) governs claims for attorney's fees and related nontaxable expenses, and it requires the party moving for such fees and expenses to, among other things, "specify the judgment and the statute, rule, or other grounds entitling the movant to the award."

Other than general references to the Lanham Act and the court's inherent authority, Hartford does not explain the basis for its asserted entitlement to an award of costs. (<u>See</u>, <u>gen.</u>, Mem. in Supp., [Docket No. 178]). Hartford has failed to show that it is entitled to costs under the Lanham Act, which on its face, only provides recovery of costs to prevailing <u>plaintiffs</u>; which ABW was not. <u>See</u>, 15 U.S.C. § 1117(a).

However, "[a] court has the inherent authority to impose costs . . . for certain conduct." <u>Ortiz v. Univ. Club of St. Paul</u>, No. 8-cv-4783 (ADM/JJK), 2010 WL 2629396, * (D. Minn. June 28, 2010) (citing <u>Chambers</u>, 501 U.S. at 44-45).

Nevertheless, Hartford presents no argument specific as to its request for costs, and it presents only the costs as generically itemized on the submitted billing invoices. Such generalized documentation of costs makes it difficult to determine the precise amount of costs

---

[13] As Hartford's counsel acknowledged on the record at the January 3, 2018, Motion Hearing, the recommendation of the undersigned that the Court grant attorney's fees pursuant to its inherent authority necessarily renders further discussion of and any decision on Hartford's request that attorney's fees be granted against Mr. Ucheomumu under 28 U.S.C. §1927 moot. (<u>See</u>, Jan. 3, 2018, Motion Hearing, Digital Record, 1:41-43).

attributable to, for example, the defense by ABW against Jalin's claims, as opposed to, the costs attributable solely to prosecution of ABW's counterclaims. As a nonexhaustive example, one invoice submitted by Hartford is 5 pages long; includes billing entries from July 5, 2011, through August 30, 2011; and includes fee billing designated by Mr. Lafeber as being for some time spent solely in defense against Jalin's claims, some time spent solely in prosecution of ABW's claims, <u>and</u> some time spent on tasks which furthered both the prosecution and defense. (Sec. Lafeber Dec., Exh. A, [Docket No. 185-1], 8-12). And, on the final page of this 5-page invoice, the following costs are also billed:  $15.26 for "Delivery"; $35.82 for "Digital Reproduction"; $5.25 for "Long Distance Telephone"; $186.37 for "Mileage"; and $1,305.11 for "Westlaw." (<u>Id.</u> at 12). Although it is possible to attribute the "Mileage" cost to a billing entry for time Ms. Dungan spent traveling to and from Fergus Falls, Minnesota for a court hearing, it is not so simple to determine how much of the "Westlaw" research cost, for example, is attributable to each discrete billing entry that could have involved research. (<u>See</u>, <u>Id.</u> at 10).

The entirety of billing records submitted by Hartford in support of its request for an award of costs has been reviewed, and the Court finds that the foregoing sort of overly generalized entries are the norm with respect to the costs Hartford now seeks. (<u>See</u>, <u>Id.</u> at 5-53). In addition, there are cost entries which appear to be related solely to ABW's counterclaims, and Hartford as ABW's assignee, for the reasons explained above, is not entitled to compensation on those costs. (<u>See</u>, <u>e.g.</u>, <u>Id.</u> at 19 ($145.00 costs for "Process Serving")).

As the moving party, Hartford bears the burden of providing sufficient documentation to justify an award of costs. <u>See</u>, <u>Wolfchild v. Redwood Cty.</u>, No. 14-cv-1597 (MJD/FLN), 2015 WL 5672718, *5 (D. Minn. Sept. 25, 2015), <u>vacated and remanded on other grounds</u> at 824 F.3d 761 (8th Cir. 2016). Here, Hartford has failed to meet that burden. It is impossible on the record

now before the Court to determine with any precision the amount of costs reasonably incurred in connection with work in furtherance, at least in part, of ABW's defense against Jalin's claims. Therefore, the undersigned recommends a reduction in the requested costs award to properly account for those costs which are sought but are not properly awarded on the basis of the record in the present litigation. See, Gurman, 884 F. Supp. 2d at 911-12 (awarding generally reduced costs when precise amount of reasonably incurred costs could not be determined from the record before the Court).

Accordingly, the undersigned recommends that to the extent that the Motion for Attorney's Fees and Related Nontaxable Expenses seeks to recover costs jointly and severally against Jalin and Mr. Ucheomumu, the Motion, [Docket No. 134], be **GRANTED in part** and Hartford be awarded the reduced amount of $4,500 in costs.

## III.    CONCLUSION

As explained above, the Court recommends that Plaintiff be awarded attorney's fees in the amount of $135,522.60 and costs in the amount of $4,500.00, for a total of $140,022.60 to be jointly and severally recoverable from Jalin and Mr. Ucheomumu.

A. Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion for Attorney's Fees and Related Nontaxable Expenses, [Docket No. 134], be **GRANTED IN PART AND DENIED IN PART** as set forth above**.**

Dated: February 9, 2018                    s/Leo I. Brisbois
                                           The Honorable Leo I. Brisbois
                                           United States Magistrate Judge

**N O T I C E**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]"  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).