## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| JALIN REALTY CAPITAL ADVISORS, LLC, | Civil No. 11-165 (JRT/LIB) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION** |
| HARTFORD CASUALTY INSURANCE COMPANY, *as assignee of* A BETTER WIRELESS, NISP, LLC, | |
| Defendant and Counter Claimant, | |
| v. | |
| RHYTHM STONE MEDIA GROUP LLC, *d/b/a* JALIN REALTY CAPITAL ADVISORS, | |
| Counter Defendant. | |

Ted A. Smith, **BERGER KAHN**, 300 Tamal Plaza Suite 215, Corte Madera, CA 94925, for defendant/counter claimant.

Andrew Ndubisi Ucheomumu, **LAW OFFICES OF ANDREW NDUBISI UCHEOMUMU**, 4938 Hampden Lane, Suite 133, Bethesda, MD 20814.

Seven years ago, Plaintiff Jalin Realty Capital Advisors, LLC ("Jalin"), represented by counsel Andrew Ndubisi Ucheomumu, brought this trademark action against A Better Wireless ("ABW"), which – after the Court dismissed all of Jalin's claims with prejudice – assigned its counterclaims to Defendant Hartford Casualty

Insurance Company ("Hartford").   Now before the Court are Hartford's motion for attorney fees and Ucheomumu's objections to the Magistrate Judge's Report and Recommendation ("R&R") on that motion.   Because those objections are as frivolous as was Jalin's underlying action, the Court will overrule them, adopt the R&R, and grant in part and deny in part Jalin's motion for attorney fees and related costs and expenses.

## BACKGROUND

In 2011, Jalin sued ABW.[1]   (Compl., Jan. 21, 2011, Docket No. 1.)   In light of egregious discovery violations, ABW moved for sanctions against Jalin and Ucheomumu, a Maryland attorney who represented Jalin pro hac vice and certified its discovery responses.   (Mot. for Sanctions, Dec. 6, 2011, Docket No. 52.)   The Magistrate Judge granted that motion, barring Jalin from using any evidence other than what it had disclosed in its first set of discovery responses – and levying monetary sanctions against Ucheomumu personally because he alone had signed the discovery responses at issue and had failed to provide notice that he would not be appearing at the hearing on the motion. (Order on Sanctions at 11-13 & n.5, Feb. 22, 2012, Docket No. 60.)

In 2013, the Court dismissed all of Jalin's claims against ABW with prejudice, describing them as "variously unsupported, insufficiently pled, and entirely without merit," and criticized the conduct of counsel during discovery, specifically noting that the Magistrate Judge's "strong sanction" was appropriate.   (Order on Summ. J. at 2-3, 5, 31,

---

[1] Because the record is clear as to the underlying facts, (*see* Order on Summ. J. at 2-10, 31, Jan. 8, 2013, Docket No. 91), only those relevant to the matter at hand are discussed here.

Jan. 8, 2013, Docket No. 91.)  Ucheomumu moved to withdraw, and the Magistrate Judge granted his motion but noted that withdrawal would not preclude a motion for attorney fees against him.  (Order on Mot. to Withdraw at 10-12, 14, Apr. 16, 2013, Docket No. 114.)  ABW brought such a motion, (Mot. for Att'y Fees, Dec. 20, 2013, Docket No. 134), which the Court stayed pending ABW's claim for reimbursement against its insurer, Hartford, (Order on Stay, Jan. 29, 2014, Docket No. 139).  Settlement of the reimbursement claim led to Hartford's substitution as Defendant and lifting of the stay. (Order Adopting R&R, May 11, 2017, Docket No. 155.)

The Court referred the motion for attorney fees to United States Magistrate Judge Leo I. Brisbois, who ordered briefing, held a hearing, and issued an R&R.  (R&R at 1, 8-9, Feb. 9, 2018, Docket No. 186.)  Hartford excluded local counsel from its request, and now seeks $170,476.77 jointly and severally from Jalin pursuant to the Lanham Act and from Ucheomumu pursuant to the Court's inherent authority to issue sanctions.  (*Id.* at 8-9, 23 n.11, 29 n.13.)  Neither Jalin (now unrepresented) nor Ucheomumu filed a memorandum of opposition or attended the hearing.  (*Id.* at 9.)  Although Ucheomumu's law license is indefinitely suspended, he filed objections to the R&R.  (Objs., Feb. 27, 2018, Docket No. 187.)  Those objections are now before the Court.

## DISCUSSION

## I.     STANDARD OF REVIEW

Upon the filing of an R&R by a magistrate judge, "a party may serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Civ.

P. 72(b)(2); *accord* D. Minn. LR 72.2(b)(1).  "The objections should specify the portions of the magistrate judge's [R&R] to which objections are made and provide a basis for those objections."  *Mayer v. Walvatne*, No. 07-1958, 2008 WL 4527774, at *2 (D. Minn. Sept. 28, 2008).  "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3); *accord* D. Minn. LR 72.2(b)(3).

## II.   WAIVER

"When a magistrate judge is hearing a matter pursuant to his or her limited authority to make a recommended disposition, 'a claimant must present all his claims squarely to the magistrate judge, that is, the first adversarial forum, to preserve them for review.'"  *Ridenour v. Boehringer Ingelheim Pharm., Inc.*, 679 F.3d 1062, 1067 (8th Cir. 2012) (quoting *Madol v. Dan Nelson Auto. Grp.*, 372 F.3d 997, 1000 (8th Cir. 2004)).  Because Ucheomumu did not timely file briefing in opposition to Hartford's motion or appear at the motion hearing, his right to object to the Magistrate Judge's recommended disposition would ordinarily be waived.  However, in part because of Ucheomumu's representation that he was unable to electronically file documents due to his suspended law license, the Court will exercise its discretion to consider his objections.

## III.   UCHEOMUMU'S OBJECTIONS

Ucheomumu raises seven objections.  All fail.

First, Ucheomumu states that he was unable to open electronic notices of party filings and asks for a copy of related party filings and an additional opportunity to

respond to the motion for attorney fees.  But Ucheomumu acknowledges that he was able to intermittently open Court orders.  The Court's most recent Order anticipated this litigation moving forward promptly.  (Order at 4, Nov. 8, 2017, Docket No. 175.)  The day after it was issued, the Magistrate Judge entered a scheduling order naming Ucheomumu as a party against whom fees were sought and requiring opposition to be filed by December 14, 2017.  (Scheduling Order, Nov. 9, 2017, Docket No. 177.)  The Court is already granting Ucheomumu considerable latitude by considering his objections at all, and Ucheomumu does not deny that he received notice of and was able to open court orders.  Therefore, the Court will decline to modify the briefing schedule.

Second, Ucheomumu argues that it is unconstitutional to grant a fee award against an out-of-state attorney but not against local counsel.  Although Ucheomumu submits no authority, he appears to imply that this result violates the dormant commerce clause.  It does not.  This case does not involve state law, and the federal law at issue has been neutrally applied.  First, Hartford did not seek fees from local counsel because it does not believe that local counsel behaved in bad faith.  (R&R at 8-9; *see also* Resp. to Objs. at 3-4, Mar. 9, 2018, Docket No. 188.)  Second, although the Magistrate Judge could have recommended sanctions on his own initiative, it was not error for him to decline to do so.  Ucheomumu's argument that local counsel was absent from the same hearings he failed to attend is unavailing in light of the fact that various local counsel repeatedly endeavored to withdraw from the case, (*see* Gilbert Notice of Withdrawal, July 18, 2011, Docket No. 36; Hastings Notice of Withdrawal, Mar. 5, 2012, Docket No. 61), at least one in part because of Ucheomumu's failure to communicate with her, (Order on Mot. to Withdraw

at 12-14.)  Moreover, Ucheomumu ignores the other independent justifications for the fee award elaborated in the R&R.  (R&R at 24-27.)

Third, Ucheomumu objects to the Magistrate Judge's reliance on the disciplinary findings of the Maryland Court of Appeals, arguing that the court did not make independent findings in support of its disciplinary sanctions, but instead imposed discipline "mostly based exclusively on the sanctions imposed" here.  (Objs. at 3.)  That is blatantly false.  The Maryland Court of Appeals quoted the hearing judge's extensive findings of fact and resolved Ucheomumu's exceptions to them.  *Att'y Grievance Comm'n of Md. v. Ucheomumu*, 150 A.3d 825, 830-34 (Md. 2016).  Its conclusion was that Ucheomumu "engaged in serious, wide-ranging misconduct, and violated numerous [Maryland Lawyers' Rules of Professional Conduct], two Maryland Rules [of Professional Conduct], and one provision of the Code of Maryland."  *Id.* at 849 (citing in particular his failure to maintain an attorney trust account and his conduct in this case).  Ucheomumu's clumsy attempt at sleight of hand – pointing to a single page of "additional information" included in the report of a 2014 Peer Review Panel to distract from the unequivocal 2016 conclusions of the Court of Appeals – strongly suggests that the discipline imposed thus far has not had the desired effect.

Fourth, Ucheomumu submits that the Magistrate Judge erred by relying on hearsay statements made by Jalin's principal, David Jackson, in the course of concluding that Ucheomumu acted in bad faith throughout the course of this litigation.  Ucheomumu is wrong.  First, the Court may take judicial notice of court transcripts because they are public records.  *See Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007).  Second, "the Federal

Rules of Evidence do not necessarily apply in the context of a motion for sanctions," though "evidence relied on must, at a minimum, bear indicia of reliability." *Sentis Grp., Inc., Coral Grp., Inc. v. Shell Oil Co.*, 559 F.3d 888, 901 (8th Cir. 2009). That requirement is met here because the statements were explicit, first-hand, and made under oath during Jackson's criminal trial. *Cf. id.* at 900-01. Third and finally, the statements would likely fall into the residual hearsay exception for the same reasons. Fed. R. Evid. 807. Thus, it was not error for the Magistrate Judge to use the statements for the limited purpose of corroborating the Court's prior findings of bad faith.

As part of this fourth objection, Ucheomumu also argues that he was not responsible for Jalin's discovery violations because he did not act in bad faith, but was merely "a new attorney that was being taken advantage of by a criminal." (Objs. at 3.) Not only is that claim contradicted by Jackson's testimony, but the Magistrate Judge has already levied monetary sanctions against Ucheomumu personally in part due to the fact that he – and only he – signed the discovery responses. (Order on Sanctions at 13 n.5). Moreover, the Court explicitly found that Ucheomumu was "in large part" to blame for the discovery violations. (Order on Summ. J. at 3). Little wonder: the record Ucheomumu submitted to oppose ABW's motion for sanctions included, for instance, an email to opposing counsel in which he described opposing counsel's email about a meet-and-confer as "a marvel in intellectual masturbation." (Pl.'s Opp. to Mot. for Sanctions ¶ 6, Ex. D, Dec. 23, 2011, Docket No. 54.) Ucheomumu may not shift blame for his own conduct to Jalin. The Magistrate Judge did not err in enumerating the findings of bad faith already in the record and concluding that they warrant a fee award against both Jalin

and its counsel.  *See Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, No. 09-1091, 2012 WL 12894846, at *10 (D. Minn. May 11, 2012) (finding that counsel's "continued pattern of hide-the-ball gamesmanship" regarding discovery warranted sanctions).

Fifth, Ucheomumu posits that Jalin's ACPA claim cannot justify an award of attorney fees because ACPA is not part of the Lanham Act.  Set aside that this is wrong as a matter of law, *see, e.g.*, *Faegre & Benson, LLP v. Purdy*, 447 F. Supp. 2d 1008, 1011 (D. Minn. 2006) (discussing an attorney fee grant on an ACPA claim), that Jalin also brought a frivolous Lanham Act trade dress claim that separately justifies a fee award, and that all of Jalin's claims are "inextricably intertwined," (R&R at 15-18).  What is crucial is that Hartford only sought – and the Magistrate Judge only recommended – a Lanham Act fee award against Jalin, not Ucheomumu.  Because Ucheomumu is no longer Jalin's counsel and his law license is both out-of-state and currently suspended, an objection on Jalin's behalf would be an unauthorized practice of law.

Sixth, Ucheomumu argues that the law of the case doctrine applies to limit the rate of ABW counsel Michael Lafeber to $230 per hour, the rate the Magistrate Judge used in his previous sanctions grant.  Ucheomumu incorrectly states that Lafeber gave the same range of rates in the present litigation that he gave in the earlier sanctions litigation.  In fact, Lafeber earlier failed to provide an estimated rate for this case, merely stating that he usually billed $520 per hour but was charging ABW less; as a result, the Magistrate Judge assessed sanctions based on the rate that an associate at Lafeber's firm was billing on this case.  (Order on Sanctions at 13.)  Now, for the first time, Lafeber gave a range of what he billed ABW:  from $425 to $550 per hour.  The Magistrate Judge considered that

range, found it to be "reasonable for the Minnesota legal community," and found that $475 was a reasonable rate for calculating billing entries whose precise hourly rate was not discernable from the records submitted.  (R&R at 14-15.)  He did not err in so doing, and indeed Ucheomumu does not argue that $475 is an unreasonable fee.

Seventh, Ucheomumu argues that the primary litigation ended after ABW filed its motion for summary judgment on May 30, 2012.  At a minimum, it is inconceivable that ABW's reply brief and the hearing on that motion were not part of the primary litigation. Moreover, the Court did not rule on ABW's motion until January 8, 2013, and judgment was not entered on Jalin's claims until December 6, 2013.  The Magistrate Judge ordered supplementary briefing to discern how much time counsel spent defending Jalin's claims (as opposed to advancing ABW's counterclaims) and set his award recommendation accordingly, thus properly ensuring that the sanction as a whole was compensatory rather than punitive.  *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186-88 (2017).

All of this said, the Court is reluctantly willing to concede that Ucheomumu is not quite as culpable as his client.  *See Ucheomumu*, 150 A.3d at 838 (finding a lack of clear and convincing evidence that Ucheomumu had advance knowledge of the fraud perpetrated by Jalin and its principal, Jackson).  The Court has already found that both Jalin and Ucheomumu acted in bad faith from discovery onward, but it is less clear that Jalin's bad faith in bringing a vexatious Complaint may be personally attributed to its counsel.  Other than its frivolity, the only concrete evidence that the Complaint was

brought in bad faith is Jackson's subsequent conviction.[2]  The Court is deeply skeptical of Ucheomumu's depiction of himself as a neophyte manipulated by a criminal he had known for nearly two decades and knew had been previously convicted of fraud, *id.* at 830-31.  But this skepticism alone is insufficient to warrant a finding of bad faith with regard to the Complaint.  And, although Jalin's claims were "variously unsupported, insufficiently pled, and entirely without merit," (Order on Summ. J. at 2), Ucheomumu had been a licensed attorney for less than two years at the time he filed them, *see Liberty Life Assur. Co. of Bos. v. Devillalvilla*, No. 6:12-1320-37, 2014 WL 309084, at *5 (M.D. Fla. Jan. 28, 2014) ("Wielding Hanlon's razor, the Court declines to infer malice from conduct that can be adequately attributed to incompetence.").  Thus, the Court will reduce Ucheomumu's liability for the fees and costs award by 10 percent to exclude the pre-discovery category of litigation.  *See Goodyear*, 137 S. Ct. at 1187.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, the Court **OVERRULES** Ucheomumu's Objections [Docket No. 187] and **ADOPTS** the

---

[2] The Magistrate Judge rejected Hartford's argument that Jackson's trial statements prove that Ucheomumu acted in bad faith by filing the Complaint because it wrongly identifies Jalin's principal as C. David Manns.  (R&R at 27; *see also* Mem. Supp. Mot. for Att'y Fees at 36, Nov. 30, 2017, Docket No. 178.)  According to Ucheomumu, Jackson told him that he had legally changed his name to C. David Manns.  *Ucheomumu*, 150 A.3d at 831.  The earliest evidence that Ucheomumu knew that Manns was a false name comes from an FBI agent who testified that he told Ucheomumu as much on June 6, 2011.  *Id.* at 832, 836.  Jalin's first local counsel initially attempted to withdraw from the case one month later.  (*See* Gilbert Notice of Withdrawal.)  As such, it is proper to conclude that Ucheomumu acted in bad faith from June or July 2011 onward.

Report and Recommendation of the Magistrate Judge [Docket No. 186] to the extent consistent with this Opinion.  Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion for Attorney Fees and Related Nontaxable Expenses [Docket No. 134] is **GRANTED in part and DENIED in part**.

2. Defendant is awarded $135,522.60 in fees and $4,500 in costs, for a total of $140,022.60.  The entire award shall be recoverable from Jalin, and 90 percent of the award ($126,020.34) shall be jointly and severally recoverable from Jalin and Ucheomumu.


DATED:  May 16, 2018
at Minneapolis, Minnesota.                         _____
                                                                  JOHN R. TUNHEIM
                                                                        Chief Judge
                                                           United States District Court